By the Court, Bronson, J.
When the plaintiff obtained further insurance upon the mill, it was his business to give notice thereof to.the company, and either have the same endorsed on the policy, or otherwise acknowledged and approved by the defendants in writing. If he neglected to comply with this condition, the policy was to cease and be of no further effect. *149 This is putting the case in the most favorable light for the defendants. The plaintiff gave notice in due time of the further insurance, and the same was acknowledged by the defendants in writing. But the notice of further insurance was to be “ acknowledged and approved” by the company, and it is said that there was no approval. That may be true if we look only at the literal reading of the answer which the defendants gave to the notice. But I take the rule to be, that a writing contains all that may fairly be implied from it, and it is difficult to read the answer without inferring that the defendants meant to approve, as well as acknowledge the notice of a further insurance. What else could the defendants have intended ? They say to the plaintiff, “We have received your notice of additional insurance ;” and there they stop. There was no disapproval, not was there any suggestion that the matter was reserved for future consideration. The plaintiff could not but understand from the answer that the notice—or the further insurance, if such be the true reading of the clause—was “ acknowledged and approved,” and that nothing further remained to be done. Let us apply Dr. Paley’s rule in, ..relation to the performance of contracts. He says: “ Where the terms of a promise admit of more senses than one, the promise is to be performed in that sense in which the promiser apprehended at the time the promisee received it.” Now, how did the defendants apprehend at the time that the plaintiff would receive their answer? If they secretly reserved the right of approval or disapproval at a future period, could they have believed that their written answer would be so received by the plaintiff? I think not. They must have intended the plaintiff should understand from the answer that every thing had been done which was necessary to a continuance of the policy, and consequently that they approved, as well as acknowledged the further insurance.
Let us look a little further into the contract, to see how much was intended by this provision for a notice and approval. A subsequent clause in the policy provides for a rateable apportionment of the loss between the different companies, in case of a further insurance on the same property. The primary object *150 of the clause under consideration was, to secure a notice to the company of any other insurance, to the end that they might the more certainly have the benefit of a pro rata distribution in case a loss should happen. The penalty of a forfeiture of the policy was therefore imposed on the plaintiff if he should neglect to give the notice. In this view of the case the condition was performed the moment the defendants received the notice and acknowledged the same in writing. But there is another feature in the case which shows that something more than a notice was intended. The defendants refused to insure to the amount of more than two-thirds of the value of the property,(a) and thus left the applicant to stand his own insurer as to the remaining third. This was calculated to secure care and watchfulness on his part; and by the word “ approved,” the defendants intended to reserve the right of putting an end to the policy in case of any further insurance. When the notice was received, they had an election to continue or terminate their risk. They were at liberty to say, “ This policy shall cease and be of no further effector they might allow the risk to continue. But the company had nothing more than the right of election. They could not continue to take the fruits of the contract without incurring the hazard; and if they intended to terminate the policy, the plaintiff was entitled to know it, to the end that he might cause himself to be insured in some other quarter. Now what was done? The defendants had all the facts before them, and could as well decide the question in an hour as in a month. They say to the plaintiff, “ We have received your notice of additional insurance.” Nothing was said about putting an end to the contract, nor rvas there any intimation that the question was reserved for future consideration. The plaintiff would reasona- , bly infer from such an answer that the defendants had elected to continue the risk; and they had no right to leave him under that impression until after a loss had happened, and then say to *151 him that their election had not been made. Honesty and fair dealing forbid it.
It was said in argument that the secretary had no power to approve or make an election for the company in this matter. That may be so. But he was the proper organ of the company for the purpose of communicating their determination to the plaintiff. It is not necessary to consider his letter as the act of approval or election; but only as the evidence that the company had acted. There can be no doubt that the letter was sufficient evidence of that fact, and I have therefore treated the xvords of the secretary as being the language of the company.
But let it be granted that the defendants have never elected to continue the policy, and how xvill the case then stand ? They certainly have never elected to put an end to it. Making further insurance did not work a forfeiture of the policy, unless the plaintiff neglected to give notice “with all reasonable diligence,” and there is no pretence of any such neglect. On receiving no-; tice, it was for the defendants to say whether the contract should terminate or not; and until they made the election the policy continued in force. This is, I think, the reasonable construction of the contract, and if that be so, there is no longer any difficulty in the case. The policy was in full force at the time the loss happened and the cause of action accrued. Indeed, it is in full force still.
All the other questions made upon the trial were decided in the plaintiff’s favor at the circuit. If the judge had intimated a different opinion, the case would have been open to further explanation. We do not therefore go beyond the point on which the nonsuit was ordered.
New trial granted.

 This fact was assumed in argument by the counsel on both sides.